## Frank Davidson and Curt Davidson v. Commonwealth.

(Decided September 23, 1924.)

### Appeal from Perry Circuit Court.

1. Homicide—Happenings on Previous Occasion Only Competent as Illustrating Motives of Parties, or Showing What they would Reasonably Do.—What happened on previous occasions is only competent, on issue of self-defense, as illustrating motive of parties, or showing what they would reasonably do under the circumstances.

2. Homicide—Detials of Previous Difficulty Held Properly Excluded.—Where court allowed witness to state there was previous difficulty, and that pistols were drawn, and that deceased got drop on one defendant, it did not substantially err in refusing to permit defendants to testify as to finding of moonshine still operated by deceased and others and accusation by deceased that defendant's son had stolen some of whiskey; defendants claiming they killed in self-defense.

3. Criminal Law—Court Erred in Failing to Admonish Jury that Testimony as to Bad Moral Character should be Considered Only to Affect Credibility.—Court erred in failing to admonish jury that testimony of witnesses that defendants were of bad moral character should be considered only to affect their credibility as witnesses.

4. Homicide—Failure to Admonish Jury as to Testimony of Witnesses as to Bad Moral Character Not Reversible Error.—Failure to admonish jury that testimony as to bad moral character of defendant is to be considered on question of credibility only does not require reversal, where on whole case defendant's substantial rights were not prejudiced, as where case turned on credibility of witnesses as to who began difficulty in homicide case.

5. Criminal Law—Assumption that Defendant Shot Deceased Held Not Prejudicial, when Fact Unquestioned.—Assumption by court, in instructions that certain defendant shot deceased, could not have misled the jury prejudicially, where there was no question that such defendant did shoot deceased.

6. Criminal Law—Instructions to be Read Together.—All instructions are to be read together.

7. Homicide—Verdict Held to Sufficiently Find Guilty of Murder.—A verdict finding defendant guilty and fixing his punishment at confinement for life was necessarily a finding he was guilty of murder, with which he was charged.

D. G. BOWLING, WOOTTON, SMITH & WOOTON, R. L. BALLOU and HARRY EVERSOLE for appellants.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Frank Davidson and his son, Curt Davidson, were indicted in the Perry circuit court for the wilful murder of Rufus Herd. On the trial of the case the jury returned the following verdict:

"We the jury do agree and find the defendant Frank Davidson guilty, and fix his punishment in the state penitentiary for the period of his natural life.                                    "J. D. COLWELL.

"We the jury do agree and find the defendant Curt Davidson guilty of manslaughter, and fix his punishment in the state penitentiary for the period of twenty-one years.                    "J. D. COLWELL."

The court entered judgment upon the verdict, sentencing Frank Davidson to the state penitentiary for life and Curt Davidson for a period of twenty-one years. Their motion for a new trial having been overruled they appeal, insisting that the circuit court erred to their prejudice in the exclusion of evidence offered by them; in instructing the jury; and in entering judgment upon the verdict against Frank Davidson.

To make intelligible the grounds of reversal relied on as to the rejection of evidence offered by the defendants, we must state the facts shown or the testimony admitted. The killing occurred on Sunday morning about eight o'clock. The Commonwealth proved by Hiram Bailey that on Saturday evening Frank and Curt Davidson passed his father's home; that he and his father and Rufus Herd were there; that they stopped at the gate and called them out, and that at the gate a difficulty occurred between Frank Davidson and Rufus Herd; that each had out a pistol and Davidson and his son then went on up the creek. On cross-examination the defendants asked the witness if Davidson did not say that he had no whiskey and the witness said to him that he had a plenty that Curt had taken from his still. The court refused to allow the question to be answered, but he did allow the witness to state that Rufus Herd took his pistol and punched it up against Frank Davidson's head.

The Commonwealth also showed that after this difficulty on Saturday evening, Frank Davidson and his son went about three miles to a store and bought a supply of cartridges for both their pistols, and that as they returned from this store a farmer, whose house they passed, heard Frank say, "We will get him before the sun rises," and Curt said, "You are right, we will." The next morning Frank Davidson, his son Curt, both armed, and his son Raymond, who was unarmed, were walking along the road passing the residence of Fulton Caudill. Caudill and Rufus Herd were sitting on the side of the road near Caudill's barn. When the Davidsons came up, as Caudill states, this happened:

"They come up and said good morning, and we said good morning, and Frank he jerked his pistol

and jumped and grabbed him and slapped him on the head with his left hand, and jabbed him under there with his pistol with his right hand, and he jerked it up and it fired, and he tucked his head down that way and he raised it up and when he raised it he hit him in the head with his pistol and he bowed over and he raised up again, and the next time it appeared to me like he jabbed out and hit him, and he pitched over that way and he pushed back as far as he could get up on his hand and Curt run in and shot him right in there, right in the back there, and he pitched over that way and Frank he walked right in above, and me standing down there, and he commenced shooting down and I left."

On the other hand Frank Davidson and each of his sons testified that as they came up Herd sprang up with his pistol and fired at Frank Davidson; that Davidson knocked the pistol away with his left hand and a scuffle ensued between him and Herd in which Herd was trying to shoot Davidson with the pistol; that Davidson then drew his pistol and shot Herd; that the struggle continued between them and Curt drew his pistol and shot Herd, but that all the shooting was done in self-defense. They also denied the threat referred to above and showed that they had no reason to anticipate the presence of Herd at Caudill's and were going out to work when the meeting occurred. There were a number of bullet holes in Herd; he was shot at least four times, and died a few hours later. There were picked up off the ground a number of empty shells corresponding to the pistols of Frank and Curt Davidson and one shell corresponding to the pistol of Herd. There also was picked up a piece of the stock of this pistol, which apparently had been shot off. Raymond Davidson, though present, appears to have had no part in the difficulty. When Frank Davidson was on the stand the court refused to allow him to tell what he said to Hiram Bailey the evening before or what Bailey said to him, but he allowed him to testify that Bailey had his pistol started out and got it nearly out of his holster and he then got his on Bailey and said, "Don't do that;" that Herd was standing behind him and punched him on the back of the head with his pistol and said, "You are too late; I beat one man'e eye out and I will beat yours out;" that a woman then came along and they let him go on up the road. His counsel offered to prove by him that a short time before this difficulty he

was out looking for his hogs and found Rufus Herd, Hiram Bailey and Hamp Bailey operating a moonshine still within half a mile of Herd's home; that a few days later he was there again and saw the same men operating the same still; that they ran off, in his presence, sixteen gallons of moonshine whiskey and took it down the hollow; that after this some whiskey had been taken away from this still by somebody and that Herd accused Curt Davidson of taking this whiskey, and that when they met on Saturday evening this accusation was made again, and that after they parted Frank Davidson asked Curt if it was true that he had taken any of their whiskey and Curt told him yes, he had taken it, and these facts were the reason why he and his son went and bought the cartridges that evening. The court refused to allow him to state anything about finding the still out in the woods or the whiskey, but allowed him to state that he was afraid of Herd and the Baileys; was afraid they intended to take his life and his son's, and for that reason they went down to the store Saturday evening and bought the cartridges.

When Curt Davidson was on the stand practically the same questions were asked and the court adhered to the same ruling.

It is earnestly insisted that the court should have allowed the witness to state everything that occurred or was said at the meeting on Saturday and also to tell about the finding of the still and the taking of the whiskey previous thereto. But in all such cases the question is, was the defendant in danger of suffering death or great bodily harm at the time of the shooting, What happened on some previous occasion is only competent as illustrating the motives of the parties or showing what they would reasonably do under the circumstances. The court did allow the witness to state that there was this difficulty on Saturday and that the pistols were drawn and that Herd, being behind Frank Davidson, had gotten the drop on Frank Davidson when Frank was drawing his pistol on Bailey and Bailey was drawing his pistol on Frank. Only so much of the previous difficulty as illustrated the feeling between the parties was really competent, and we do not see that there was any substantial error in refusing to allow the witness to state all that was said there about the whiskey or about his having found the moonshine still some days before. It is conceded in the testimony that before they got the cartridges after this difficulty on Saturday evening, as the Davidsons returned

from one store they passed in the road Herd and the two Baileys; that the parties spoke as they passed and nothing more was said or done. The jury evidently came to the conclusion from all the evidence that when the Davidsons came upon Herd Sunday morning Frank Davidson determined that Herd should not get the drop on him again and that he "took time by the forelock" in drawing his pistol and undertook to get the drop on Herd.

On the whole case we do not find that there was any substantial error in the rejection of evidence to the prejudice of an intelligent understanding of the real case by the jury.

It is earnestly insisted that the court erred in failing to admonish the jury that the testimony of three witnesses to the effect that Frank and Curt Davidson were men of bad moral character should be considered by the jury only to affect their credibility as witnesses. This instruction should have been given. It was at one time the rule in this court that a failure to so admonish the jury was ground for reversal, but the ruling in the later cases is to the effect that this is not ground for reversal, unless on the whole case the defendant's substantial rights were prejudiced. We do not see that the failure to give this admonition in this case could have been prejudicial, for the testimony only went to their general moral character, and the case really turned on the credibility of the witnesses as to who began the difficulty on Sunday morning. McDaniel v. Commonwealth, 185 Ky. 608; Stacey v. Commonwealth, 189 Ky. 402.

It is also earnestly argued that the court in its instructions to the jury assumed that Frank Davidson shot Herd. The instructions are too long to be quoted in the opinion, but we cannot see that they bear this construction. In fact, there is no question that Frank Davidson did shoot Herd, and the jury could not have been misled prejudicially by the form of the instructions.

It is also earnestly insisted that the instruction on self-defense required that both of the defendants should believe that one or the other was in danger at the hands of Herd before either could shoot in self-defense or defense of the other; but this will be to give the instruction a very strained construction.

All of the instructions are to be read together and when so read we do not think any jury could have so understood them.

While the verdict against Frank Davidson does not in terms find him guilty as charged, this is the necessary meaning of the verdict of the jury when read in connection with the indictment and the instructions of the court. He was indicted for murder; the court instructed the jury if they found him guilty of murder they should fix his punishment at confinement in the penitentiary for life, or at death. Their verdict finding him guilty and fixing his punishment at confinement for life in the penitentiary is necessarily a finding that he was guilty of murder.

On the whole case we see no substantial error to the prejudice of the defendants. Judgment affirmed.